### Victor M. MALDONADO, Appellant,

### v.

### DISTRICT OF COLUMBIA, Appellee.

### No. 90–1314.

District of Columbia Court of Appeals.

Submitted May 29, 1991.

Decided July 16, 1991.

Webster T. Knight, Washington, D.C., appointed by this court, was on the brief, for appellant.

John Payton, Corp. Counsel, Charles L. Reischel, Deputy Corp. Counsel, and Rosalyn Calbert Groce, Asst. Corp. Counsel, Washington, D.C., were on the brief, for appellee.

Before TERRY and FARRELL, Associate Judges, and REILLY, Senior Judge.

TERRY, Associate Judge:

Appellant Maldonado was charged with one count of operating a motor vehicle while his driver's license was suspended.[1] After a non-jury trial, he was found guilty as charged. Maldonado appeals, arguing that the government failed to prove an essential element of the crime. We reject his argument and affirm the conviction.

### I

Officer Ronzell Baker was on routine patrol when he noticed Maldonado sitting in the driver's seat of a car parked next to a fire hydrant in front of 1730 Columbia Road, N.W. The engine was running, and another man was in the passenger seat. After watching the car for a few minutes, Officer Baker approached and told Maldonado to move it; Maldonado, however, just

---

1. D.C.Code § 40–302(e) (1990).

looked at him. The officer then asked Maldonado to turn the engine off and produce his driver's license. In response, Maldonado produced not a license but an identification card. The officer ran a check and learned that Maldonado's driver's license had been suspended. Maldonado was then arrested. The government also introduced a document bearing Maldonado's signature in which, by signing it, he admitted that his license was suspended.

José Sevilla, the man in the front passenger seat, testified for the defense. He said that he was initially in the back seat, Maldonado was in the front passenger seat, and Maldonado's wife was driving the car. They drove to 1730 Columbia Road and parked, and Mrs. Maldonado got out to do some shopping. Sevilla then moved to the front passenger seat because he was too large to fit comfortably in the back. Maldonado moved to the driver's seat after the car was parked. Sevilla denied that the engine was running, but he admitted that the key was in the ignition.

Maldonado testified that his wife had driven the car and had gotten out to go shopping. He said that he sat in the driver's seat because he wanted to hear the radio, and the only radio speakers were in the front. Maldonado admitted that the keys were in the ignition, but, like Sevilla, he denied that the engine was running. He also admitted that his driver's license had been suspended.

On cross-examination Maldonado stated that there was "something wrong" with his right hand on the date he was arrested. This injury, he said, prevented him from turning the ignition key. He conceded, however, that there was nothing wrong with his left hand. He testified also that

his back was "hurting ... a lot" on that date,[2] but that he could walk without assistance.

The court found that the engine was running, that Maldonado knew his license had been suspended, and that Maldonado was in the driver's seat of the car.[3] The court noted that the only issue was whether Maldonado was "operating" the car within the meaning of D.C.Code § 40–302(e). It ruled that he was, and accordingly found him guilty as charged. On appeal Maldonado's only contention is that the government failed to introduce sufficient evidence to show that he was physically capable of operating or being in control of the car at the time the officer saw him behind the wheel.

## II

■ D.C.Code § 40–302(e) (1990) imposes criminal sanctions for operating a motor vehicle with a suspended license.[4] The term "operate" is defined to include "operating, moving, standing, or parking any motor vehicle ... on a public highway of the District of Columbia." D.C.Code § 40–101(10) (1990). This court has held that the term "operating," in a prosecution for operating a vehicle after suspension of a driver's license, means being "in actual physical control of the vehicle, capable of putting the vehicle into movement or preventing its movement...." *Houston v. District of Columbia,* 149 A.2d 790, 792 (D.C.1959), cited with approval in *Jackson v. District of Columbia,* 180 A.2d 885, 887 (D.C.1962);[5] *see also United States v. Weston,* 151 U.S.App.D.C. 264, 268 n. 24, 466 F.2d 435, 439 n. 24 (1972). The evidence in *Houston* established that the defendant was sitting in the driver's seat of a car with

---

**2.** A few months later, he testified, he had back surgery which alleviated the pain.

**3.** Maldonado does not dispute these factual findings.

**4.** Section 40–302(e) provides:

Any individual found guilty of operating a motor vehicle in the District [of Columbia] during the period for which the individual's license is revoked or suspended, or for which his right to operate is suspended or revoked,

shall, for each such offense, be fined not to exceed $5,000 or imprisoned for not more than one year, or both.

**5.** These cases involved D.C. Code § 40–302(d) (1951), which was essentially identical to the current section 40–302(e). *See Jackson, supra,* 180 A.2d at 887 n. 3. An applicable regulation defined "operator" as any person "who drives or is in actual physical control of a vehicle." *Houston, supra,* 149 A.2d at 792.

the engine running. This court held that this was sufficient to prove that he was "operating" the car for purposes of the statute. Because *Houston* is factually indistinguishable from the instant case, we hold that it mandates affirmance of Maldonado's conviction.

■ Maldonado does not dispute that the test for "operating" is "capab[ility] of putting the vehicle into movement or preventing its movement." He argues, however, that the crime of which he was convicted has an additional element. Citing *Key v. Town of Kinsey*, 424 So.2d 701, 704 (Ala. Crim.App.1982), he maintains that the government must prove beyond a reasonable doubt that the accused "is physically capable of starting the engine and causing the vehicle to move." [6] *Key*, which is obviously not binding on this court, involved the definition of the term "actual physical control" for purposes of Alabama's drunk driving statute. The *Key* court held that the state had to prove, as one of three necessary elements of the crime, that the defendant was "physically capable of starting the engine and causing the vehicle to move." *Id.* at 704. *Key* is no longer authority even in Alabama, much less anywhere else, because the Supreme Court of Alabama subsequently abandoned the "stringent, three-pronged test" set out in *Key* in favor of a broader "totality of the circumstances" test. *Cagle v. City of Gadsden*, 495 So.2d 1144, 1147 (Ala.1986).

■ Maldonado's contention that proof of physical capability of controlling the vehicle is an element of this offense is entirely without merit. D.C.Code § 40–302(e) prohibits "operating" the vehicle after suspension; it does not even hint that the government must prove that the defendant is physically capable of operating the vehicle. The cases, beginning with *Houston*, make clear that proof that the defendant was sitting behind the steering wheel of a parked car with the motor running is sufficient to prove that he or she was "operating" it. Nothing in the case law suggests that there is an additional element, and Maldonado cites no authority for the proposition that this court should now create one. As we have often stated, the government is not required to negate every possible hypothesis of innocence. *E.g., In re S.P.*, 465 A.2d 823, 826 (D.C.1983) (citing cases). We note that Maldonado presented no evidence whatever that he could not use his legs, and the trial court found that Maldonado could have started the car with his left hand. We hold accordingly that the evidence was sufficient to sustain Maldonado's conviction, and that the judgment of conviction must be

*Affirmed.*[7]

■

---

**6.** Maldonado concedes in his brief that if "physical capability of operating the vehicle" is not an essential element of the offense, his claim of error must fail.

**7.** We think that a claim of physical inability to operate the vehicle would be, at most, an affirmative defense, a species of the broader category of physical impossibility. *Cf. Hardy v. United States*, 118 U.S.App.D.C. 253, 254, 335 F.2d 288, 289 (1964) (reversing conviction because trial

court had excluded, as irrelevant, evidence proffered by the defendant that he "physically could not have been present at the point of arrest as claimed by the officers"). On that issue the defendant would at least have the burden of going forward with the evidence. *See Hines v. United States*, 326 A.2d 247, 248 (D.C.1974); *Williams v. United States*, 237 A.2d 539, 541 (D.C.1968). For the reasons we have stated, Maldonado did not meet that burden.