**Louis CAMPOS, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 91–CM–940.**

District of Columbia Court of Appeals.

Submitted Sept. 17, 1992.
Decided Nov. 13, 1992.

Severina Rivera, appointed by this court, was on the brief, for appellant.

Jay B. Stephens, U.S. Atty., and John R. Fisher, James N. Plamondon and Abby J. Stavitsky, Asst. U.S. Attys., were on the brief, for appellee.

Before ROGERS, Chief Judge, and FARRELL, Associate Judge, and PRYOR, Senior Judge.

PER CURIAM:

Appellant Louis Campos appeals his conviction of carrying a pistol without a license, D.C.Code §§ 22–3204 (1992 Cumm. Supp.), –3206 (1989 Repl.), on the ground that the trial judge erred by failing to instruct the jury on appellant's defense theory. We affirm.

## I

At approximately 9:00 p.m. on December 22, 1990, Officer Karen Daniels responded to a look-out call for a man with a gun in the vicinity of 1112 M Street, N.W. When she reached the corner of 11th and M Streets, Officer Daniels spotted appellant leaning against a light pole.[1] She got out of her patrol car, approached appellant, who only understood Spanish, and asked him to take his hands out of his pockets.[2] When appellant removed his hands from his pockets, he pulled out two beers, which he dropped to the ground, and he proceeded to place his hands back into his pockets. Officer Daniels then frisked appellant and she removed a silver .22 caliber Derringer, loaded with .22 caliber bullets, from appellant's left blue jeans pocket. During a later stationhouse search, the police recovered ten additional .22 caliber bullets from appellant's right pocket, but they found no fingerprints on either the gun or the ammunition. The gun was operable and appellant did not have a license to possess it.[3]

Appellant testified that he was not feeling well on the night he was arrested and that, after awaking from a nap at around 8:30 p.m., he took a medical prescription for his eyes and went to the corner of 11th and M to hail a taxi.[4] While waiting for a taxi, at approximately 8:55 p.m., two latin youths, one white and one black, came up to him. One placed two beer cans in his pockets and the other put something heavy into two of his pants pockets. According to appellant, he was unable to look in his pockets before the police came because they arrived "very fast," only one to five minutes later.

During the discussion of the instructions to be given to the jury, defense counsel requested an instruction on the defense theory of the case. Counsel asked the trial judge for:

[a] specifically tailored instruction ... that if the jury determines after reading the instruction on intent that [appellant] did not voluntarily come into contact with this weapon ... that he merely had custody, and that mere custody of the weapon is not sufficient to constitute possession. And if he didn't have possession, then that—the government has not established the fourth element of the statute.

The trial judge refused to give the requested instruction on the grounds that the law recognized no distinction between custody and possession, and that the purpose of such an instruction would be served by the instruction on general intent. When the trial judge stated that defense counsel could not argue to the jury that appellant "was merely a custodian or didn't have any intent on the basis that there is a distinction between custody which requires one kind of intention and possession which requires another," defense counsel asked for a clarification. Defense counsel asked the judge whether "Your Honor [is] ruling that I cannot argue to the jury that [appellant] did not voluntarily come into contact with this gun?" Counsel noted "That is the premise of my defense." In response, the trial judge stated "You can do that. But you can't argue to the jury that custody is one thing and possession is another thing." In other words, the trial judge explained:

you may mount a defense to this that there was an involuntary possession in the sense that it was put into his pocket and he couldn't stop them from doing it or that he didn't know that it was being

---

1. Although Officer Daniels and Officer Tolson testified that appellant fit the radio description, no other details of the broadcast were provided.

2. Appellant did not attempt to flee as Officer Daniels approached, and he apparently sought to explain in Spanish to a member of the arrest team how he had come to have the gun. Officer Torrez, a Spanish speaking police officer who arrived shortly after Officers Daniels and Tolson, testified that appellant told her that two black men had put the gun and the two beer cans in his pockets. Officer Torrez ran with her partner in the direction the two men had purportedly gone but they found no one.

3. At the close of the government's case, the trial judge denied appellant's motion for judgment of acquittal based on insufficient evidence of possession, as opposed to his mere custody, of the gun.

4. Appellant resided at 10th and M streets, N.W.

done to him or whatever other argument you want to make. But when it comes to giving the instruction, I won't give you something special along the lines of what you just asked for.

Defense counsel stated that he understood.

## II

■■■ It is well established that a defendant is entitled to a properly requested defense theory instruction provided the instruction "would defeat the theory of the prosecution," *Williams v. United States*, 337 A.2d 772, 774 (D.C.1975), and is "fairly raised by the evidence ... however weak that evidence may be." *Carter v. United States*, 531 A.2d 956, 959 (D.C.1987) (citations and internal quotations omitted); *see also Goddard v. United States*, 557 A.2d 1315, 1316–17 (D.C.1989); *Graves v. United States*, 554 A.2d 1145, 1147 (D.C.1989); *Stack v. United States*, 519 A.2d 147, 154 (D.C.1986); *Montgomery v. United States*, 384 A.2d 655, 660 (D.C.1978); *Belton v. United States*, 127 U.S.App.D.C. 201, 206, 382 F.2d 150, 155 (1967).[5] Likewise, however, a trial judge may refuse to give an instruction that has "no factual or legal basis." *Carter, supra*, 531 A.2d at 959 (citing *Taylor v. United States*, 380 A.2d 989, 994–995 (D.C.1977); *Rhodes v. United States*, 354 A.2d 863, 864 (D.C.1976)). In addition, the judge need not give the instruction in the precise language that is requested, *Stack, supra*, 519 A.2d at 154 (citations omitted), or "rehearse the evidence, especially where the effect would be ... to give special emphasis to the defendant's testimony." *Montgomery, supra*, 384 A.2d at 660 (quoting *Laughlin v. United States*, 128 U.S.App.D.C. 27, 34, 385 F.2d 287, 294 (1967), *cert. denied*, 390 U.S. 1003, 88 S.Ct. 1245, 20 L.Ed.2d 103 (1968)).

■■■ To support a conviction for carrying a pistol without a license in violation of § 22–3204, the government must prove beyond a reasonable doubt that the defendant carried an operable pistol on or about the person, was not licensed to carry the pistol and intended to "do the acts which constitute the carrying of a pistol without a license." D.C. Criminal Jury Instructions No. 4.81(A)(4) (1978); *Tucker v. United States*, 421 A.2d 32, 34–35 (D.C.1980).[6] This standard implies that the government must demonstrate that a defendant had either actual or constructive possession of the unlicensed pistol. *Tucker, supra*, 421 A.2d at 35. For this purpose there is no significant legal distinction between possession and custody. *Cf. United States v. Spears*, 145 U.S.App.D.C. 284, 293, 449 F.2d 946, 955 (1971) (possession in robbery statute does "not depend on the niceties of property law," and means "nothing more than custody or control") (citations omitted). But, it is well settled that the government must demonstrate, either through direct or circumstantial evidence, a defendant's knowledge of a pistol's presence in order to establish constructive possession.[7] *Tucker, supra*, 421 A.2d at 35 (citation omitted).

■■■ A defendant who maintains direct physical control over an object at a given moment has actual possession of such object. Criminal Jury Instructions No. 3.11 (3d ed. 1978). But a person who has no knowledge that he or she has a pistol, despite the fact that it is located on his or her person, does not exercise direct physical control over the pistol. One cannot effectively exercise control over a pistol on his or her person unless he or she knows that it is there. *Cf. Johnson v. United States*, 309 A.2d 497, 499 (D.C.1973) (government must prove defendant had knowledge to establish possession). Similarly, a person cannot have the requisite intent to

---

5. The evidence giving rise to the defense theory instruction need not be consistent with either "the defendant's testimony or the defense trial theory." *Fersner v. United States*, 482 A.2d 387, 390 n. 2 (D.C.1984) (quoting *Womack v. United States*, 119 U.S.App.D.C. 40, 40, 336 F.2d 959, 959 (1964)).

6. The government need not prove that the defendant intended to use the unlicensed pistol for an unlawful purpose. *Mitchell v. United States*, 302 A.2d 216, 217 (D.C.1973).

7. To establish constructive possession, the evidence must also demonstrate that the pistol was "conveniently accessible" to appellant. *Tucker, supra*, 421 A.2d at 35 (citation omitted).

do the prohibited acts that "constitute the carrying of a pistol without a license," Criminal Jury Instructions No. 4.81(A)(4), unless he or she knows that the object he or she is carrying is, in fact, a pistol. A defendant cannot possess the requisite general intent to commit a crime without "be[ing] aware of all those facts which make his [or her] conduct criminal." *Hearn v. District of Columbia*, 178 A.2d 434, 437 (D.C.1962).

The judge instructed the jury on the elements of the offense,[8] and gave the standard jury instruction on general intent:

Now, intent, ladies and gentlemen, means that a person had a purpose to do something. Intent means that a person acted with the will to do something. Intent means that a person acted consciously or voluntarily and not inadvertently or accidentally. Now some criminal offenses require only a general intent. Whereas here only general intent must be established, needs to be established, and the evidence shows that a person has knowingly committed an act which the law makes a crime, intent may be inferred from the doing of the act.

And that is true, ladies and gentlemen, as to all three of the charges contained in the information.

Now, intent is a state of mind. Intent cannot ordinarily be proved directly.... However, you may infer the defendant's intent from surrounding circumstances.... You may infer that a person ordinarily intends the natural and probable consequences of acts knowingly done or knowingly omitted....

Now, an act is done knowingly if it is done voluntarily and purposefully and not because of mistake, inadvertence or accident. And an act is done willfully if it is done knowingly, intentionally, and willfully.

The difficulty with the standard general intent instruction arises from the fact that it lumps together the notions of voluntariness and knowledge.[9] Knowledge is not usually defined in terms of volition.[10] Nevertheless, we conclude that under the circumstances no error occurred.

Appellant's theory was that because an object was involuntarily thrust upon him he did not know the object was a gun.[11] If his

8. The judge instructed that the government had to prove "First, that the defendant carried openly or concealed on or about his person, a pistol. Second, that the pistol was operable. Third, that the defendant had the intent to do the acts which constitute the carrying of a pistol without a license."

9. This suggests that the standard instruction might be improved. At trial two different versions of intent were argued to the jury based on the instructions:
   In closing argument, defense counsel told the jury that:
   [u]nless the government introduced evidence that will convince you beyond a reasonable doubt that in fact [appellant] had that gun on his possession, knew that he had it, only then can you find guilt.
   Counsel argued, further, that:
   the government has introduced nothing that would tie [appellant] to satisfying [sic] the last element of this statute, and that is that he intentionally set out to carry a gun.
   In rebuttal closing argument to the jury, the prosecutor told the jury that:
   you can infer intent from the acts and the fact that he had the gun in his pocket. You can infer that [appellant] had the intent to have that gun.... We submit to you that the fact that this gun is found in one's blue jeans pants

pocket, the ammunition is found in the other ... pants pocket, but you can infer that he intended to possess those weapons.

10. *See, e.g.,* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1986), which defines knowledge in various ways, the most pertinent being: "the fact or condition of knowing something with a considerable degree of familiarity gained through experience of or contact or association with the individual or thing so known" and "the fact or condition of being cognizant, conscious, or aware of something."

11. Unlike the government, we do not interpret appellant's defense theory to be an "innocent or momentary possession" theory in which "an accused must show not only an absence of criminal purpose but also that his possession was excused and justified as stemming from an affirmative effort to aid and enhance social policy underlying law enforcement." *Logan v. United States,* 402 A.2d 822, 825 (D.C.1979) (quoting *Hines v. United States,* 326 A.2d 247, 248 (D.C. 1974)). By contrast to an innocent possession defense theory, appellant contends he never had possession because he never knew the object he had was a gun. If appellant's claim is true, the law can hardly expect him to take steps such as "ensuring that [the] pistol [was] taken as soon and as directly as possible to law enforcement officers." *Hines, supra,* 326 A.2d at 249.

testimony was believed by the jury, it would defeat the government's claim that appellant carried a pistol without a license. In light of the requested defense instruction, this theory was adequately addressed by the judge's instructions to the jury. Although the instructions did not specifically address whether evidence of appellant's lack of knowledge that a pistol was on his person would defeat proof of guilt, that is not the instruction that the defense requested. Had defense counsel alerted the trial judge to the distinction between voluntariness and knowledge, the judge might have given a special instruction.

The criminal law punishes acts, in this case the carrying of a pistol without a license. But the law also requires a guilty state of mind, defined here as a general intent to do the act of carrying a pistol. In a word, it requires proof that the carrying was deliberate or on purpose, not accidental. That in essence is how the trial judge defined "knowingly," and it is also how the dictionary defines that term. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1986) ("knowingly" means "with awareness, deliberateness, or intention"). The instruction, by contrast with the prosecutor's closing argument, *see* note 9, *supra*, left no doubt that appellant could not be convicted if he never knew the pistol had been thrust into his pocket or learned the fact only moments before he was frisked; in that case his possession would have been by "mistake, inadvertence or accident," not "knowingly."

Thus, the instructions allowed the jury to consider appellant's only claim, namely that in his contact with the pistol he did not act knowingly or voluntarily, the latter being, according to defense counsel, "the premise of my defense." Defense counsel's argument to the jury focused on appellant's lack of intent, as well as other alleged deficiencies in the government's proof. *See* note 9, *supra*.

Accordingly, the judgment is affirmed.