Michael Wayne TAYLOR, Appellant,

v.

UNITED STATES, Appellee.

No. 93–CF–1540.

District of Columbia Court of Appeals.

Argued Jan. 27, 1995.
Decided Aug. 3, 1995.

Severina B. Rivera, appointed by the court, for appellant.

Jane S. Weaver, Sp. Asst. U.S. Atty. (Pennsylvania State Bar # 45355), with whom Eric H. Holder, Jr., U.S. Atty., John R. Fisher, Roy W. McLeese and Michael F. Tubach, Asst. U.S. Attys., were on the brief, for appellee.

Before FERREN and KING,* Associate Judges, and MACK, Senior Judge.

MACK, Senior Judge:

Appellant was convicted by a jury of: (1) possessing cocaine with intent to distribute it in violation of D.C.Code § 33–541(a)(1) (1993); (2) possessing a firearm during a dangerous offense in violation of D.C.Code § 22–3204(b) (1989); (3) carrying a pistol without a license in violation of D.C.Code § 22–3204(a) (1989); (4) possessing an unregistered firearm in violation of D.C.Code § 6–2311(a) (1989) (two counts); and (5) unlawfully possessing ammunition in violation of D.C.Code § 6–2361(3) (1989) (two counts). He appeals his conviction on three grounds. First, appellant argues that the trial court erred in denying his motion to suppress evidence because the officers lacked probable cause to arrest appellant and because the arrest was pretextual. Second, appellant argues that the trial court erred in denying his motion for judgment of acquittal because the government's evidence was insufficient to prove that he intended to distribute the cocaine in his possession. Third, appellant argues that the trial court erred in denying his motion for judgment of acquittal because the government's evidence was insufficient to prove that he constructively possessed the loaded weapons. We affirm in part and reverse in part.

## I.

The government's evidence shows the following: On November 23, 1992, at approximately 5:00 a.m., Officer Sean O'Connor, a uniformed member of the Metropolitan Police Department, was patrolling his assigned area which included the 700 block of Wheeler Hill Drive, an area known for prostitution. As O'Connor approached a dead end parking lot in the back of Wheeler Hill Drive, he saw a parked car with its lights on and engine running. Appellant was sitting behind the steering wheel and was apparently asleep. O'Connor walked over to the car and noticed that it had a broken steering column, indicating that the car might be stolen. He called for backup. When the backup unit arrived and the officers approached the car, appellant awoke. O'Connor asked appellant to shut off the car, step outside, and show his driver's license. Appellant said that he did not have a license. O'Connor radioed the dispatcher, confirming that appellant did not have a operator's permit and that the car had not been reported as stolen.

O'Connor arrested appellant for operating a motor vehicle in the District of Columbia without a permit in violation of D.C.Code § 40–301(d) (1990). The officers then searched the car and found two handguns under the right rear seat which was propped up higher than the left rear seat. The guns were visible only upon lifting the back seat. The guns were test fired at headquarters and it was discovered that they were unregistered and that appellant did not have a license to carry a pistol in the District. In

---

* Judge KING concurs in the result.

searching appellant incident to his arrest, the officers found a brown medicine bottle containing eighteen (18) individual rocks which appeared to be crack cocaine and one-hundred and nine dollars ($109) in cash. No drug distribution or drug use paraphernalia (*i.e.*, scales, cutters, crack pipe, tobacco and rolling paper) were recovered. Both parties stipulated that appellant tested negative for drugs on November 23, 1992.

Officer Charles Culver qualified without objection as the government's expert witness on the Department's safeguards for storing narcotics evidence and on the manner in which narcotics are packaged, sold, distributed and used in the District of Columbia. Culver's uncontested testimony shows the following: a DEA chemical analysis revealed that the medicine bottle recovered from appellant contained 1.222 grams (1,222 milligrams) of a loose rock-like substance containing 85% cocaine base, also known as crack cocaine. The eighteen individual rocks each weighed about 67 milligrams and each would sell for approximately $10 for a total street value of $180. Crack is distributed either in small ziplock bags or in containers in loose rock form. When it is sold in loose rock form, potential customers reach into the container and pull out the individual rock(s) for purchase. It is unusual for a crack user to buy eighteen rocks of crack for personal use because of the lack of quality control (one or two of the rocks might be bad) and because larger rocks of the same weight would be cheaper. Moreover, a crack dealer would be suspicious of a crack user asking to buy eighteen rocks—the dealer would think the user was either a police officer or someone who was trying to "rip him off." Also, a drug user does not usually consume the whole $10 rock at one time, but often gets at least three hits out of the rock by dividing it into two or three pieces and then smoking it alone or with marijuana. According to a DEA survey, the common dosage of crack is approximately 10 milligrams and thus, 122 hits would be expected from the total amount of crack that was found in appellant's possession.[1]

## II.

■ Appellant contends that the trial court erred in denying his motion to suppress evidence because the officers lacked probable cause to arrest him.[2] According to appellant, he was not required under D.C. law to have a driver's license in order to sit behind the steering wheel of a car in a private parking space. We disagree.[3]

■ Appellant's arrest was statutorily authorized, notwithstanding the parking lot's status as private property. D.C.Code § 40–301(d) (1990) states that "[n]o individual shall operate a motor vehicle in the District ... without first having obtained an operator's permit or learner's permit issued under the provisions of this chapter." *Id.*[4] Unlike the statutory provisions dealing with motor vehicle registration relied upon by appellant, § 40–301 makes no distinction between private and public property.[5] Nor does § 40–

---

**1.** Culver also testified to the connection between firearms and the sale of narcotics. According to Culver, drug dealers need to protect themselves with firearms because "these individuals are dealing with large sums of money.... I mean some of us might not think $50,000 is much or $10,000, but these individuals will kill you over that." Given that the government only recovered $109 in cash and $180 worth of drugs from appellant, this portion of the expert's testimony adds nothing to the government's requisite burden of proof and persuasion.

**2.** Appellant also argues that his arrest and the search incident to his arrest were pretextual. However, we agree with the government that no evidence in the record supports such a claim.

**3.** It is well settled that in reviewing the denial of a motion to suppress evidence, "[w]e are bound by the trial court's factual findings unless clearly erroneous or not supported by the evidence." *Powell v. United States*, 649 A.2d 1082, 1084 (D.C.1994) (citations and internal quotations omitted); *see also* D.C.Code § 17–305(a) (1989). Furthermore, our review of the trial court's legal conclusions in granting or denying such a motion is *de novo*. *See, e.g., Lewis v. United States*, 632 A.2d 383, 385 (D.C.1993); *Gomez v. United States*, 597 A.2d 884, 889 (D.C.1991).

**4.** Any individual violating this subsection may be fined up to $300 or imprisoned for up to 90 days (except as provided in subsection (d–1) of this section). *Id.*

**5.** Appellant's reliance upon D.C.Code §§ 40–105(a) and –101(10) (1990), in his attempt to limit the applicability of § 40–301(d) to public

301 make any cross references to the vehicle registration provisions. Moreover, this court has held that a vehicle need not be moving, in order for a person to "operate" it in violation of D.C. law imposing criminal sanctions for operating a motor vehicle with a suspended license. *See Maldonado v. District of Columbia*, 594 A.2d 88, 89–90 (D.C.1991) (conviction upheld where appellant was sitting behind steering wheel of a parked car); *Houston v. District of Columbia*, 149 A.2d 790, 792 (D.C.1959) (same). "Operating" in this context means being "in actual physical control of the vehicle, capable of putting the vehicle into movement or preventing its movement. . . ." *Maldonado, supra*, 594 A.2d at 89 (quoting *Houston, supra*, 149 A.2d at 792) (internal quotations omitted). Thus, it is clear from the record that the police did have probable cause to arrest appellant. It is also clear that the subsequent search of appellant's person and of appellant's car were both permissible as searches incident to a lawful arrest. *See, e.g., United States v. Robinson*, 414 U.S. 218, 235, 94 S.Ct. 467, 476, 38 L.Ed.2d 427 (1973); *New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981); *United States v. Harris*, 617 A.2d 189, 193 (D.C.1992).[6]

■ Appellant further contends that the trial court erred in denying his motion for judgment of acquittal because the government's evidence was insufficient to prove that he intended to distribute the cocaine found in his possession. According to appellant, he

purchased the cocaine for his own personal use.[7]

■ In the instant case, the government was required to prove that appellant knowingly and intentionally possessed a controlled substance with the specific intent to distribute it. *Lawrence v. United States*, 603 A.2d 854, 858 n. 5 (D.C.1992). An intent to distribute can be inferred from expert testimony and the possession of a quantity of drugs that exceeds a reasonable supply. *Spriggs v. United States*, 618 A.2d 701, 704 (D.C.1992) (government's expert testified that quantity, packaging, and value of drugs was more consistent with intent to distribute than personal use); *id.* ("possession of a quantity of drugs that exceeds reasonable supply is *significant evidence* of an intent to distribute") (citing *Shorter v. United States*, 506 A.2d 1133, 1135 (D.C.1986)) (emphasis added). Packaging of narcotics in a manner making them ready to sell to individual purchasers is strong evidence of an intent to distribute. *Angel Davis v. United States*, 623 A.2d 601, 603 (D.C.1993) (government presented unrebutted expert testimony that quantity and packaging of drugs was consistent with intent to distribute); *id.* at 604 ("We have repeatedly held that the packaging of narcotics so as to make them ready for sale to individual purchasers is 'strong evidence of an intent to distribute' ") (quoting *Edmonds v. United States*, 609 A.2d 1131, 1132 (D.C.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 2983, 125 L.Ed.2d 679 (1993)); *Chambers v. United*

---

highways is misplaced. Section 40–105(a) limits its unlawful acts to public highways, but it only applies to vehicle registration violations and, § 40–101(10) limits its definition of "operate" to public highways but also expressly limits its applicability to vehicle registration violations—specifically, §§ 40–101, –102 and –104 to –106 of the Code.

6. It is important to mention that Officer O'Connor's initial questioning of appellant was proper because he noticed that the car had a broken steering column, indicating that the car might be stolen. However, absent some evidence of "articulable suspicion" of criminal activity, Officer O'Connor would *not* have been entitled to question appellant about his driver's license. *See, e.g., Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979) (invalidating discretionary stops of motorists to check for licenses and registrations when *not* based upon articula-

ble and reasonable suspicion that the motorist is unlicensed, that the car is unregistered, or that either the car or an occupant is otherwise subject to arrest); *United States v. Botts*, 110 Daily Wash. L.Rptr. 1257, 1263 (1982) (discussing *Prouse, supra* ).

7. The standard by which we assess appellant's sufficiency arguments has been reiterated in numerous cases. We must view the evidence in the light most favorable to the government. *See, e.g., Jones v. United States*, 625 A.2d 281, 288 (D.C. 1993). We also must make no distinction between direct and circumstantial evidence. *Id.; Lawson v. United States*, 596 A.2d 504, 509 (D.C. 1991). Moreover, in order to withstand a motion for judgment of acquittal, the government is not required to refute every possible inference of innocence. *Taylor v. United States*, 601 A.2d 1060, 1062 (D.C.1991).

*States*, 564 A.2d 26, 31 (D.C.1989) (cocaine possessed in three separate packages rather than one large mass was evidence of intent to distribute).

In the instant case, the government presented unrebutted expert testimony that the quantity and packaging of the drugs recovered from appellant was more consistent with an intent to distribute them than with personal use. The expert stated that crack is distributed in containers in loose rock form— "[i]t could be a medicine container or any other container, plastic bag or sandwich bag"—and that it is unusual for a crack user to buy eighteen rocks for personal use because of the lack of quality control, larger rocks of the same weight would be cheaper, and a crack dealer would be suspicious of such a request. The expert also stated that a drug user usually gets at least three hits from *one* of the eighteen rocks found in appellant's possession. Moreover, based on a DEA survey on common crack dosage, the expert concluded that 122 hits would be expected from the total amount of crack recovered from appellant.

■ The circumstances surrounding appellant's arrest also support an inference that he possessed the seized drugs with an intent to distribute them and not for personal use. According to the government's uncontested expert testimony, a crack user would not consume an entire $10 rock but would divide it up into two or three pieces in order to get at least three hits from it. However, no cutters or scales or any other equipment necessary to make the crack ready for personal consumption were found in appellant's possession. In fact, the evidence reveals that no drug paraphernalia whatsoever (including a crack pipe or tobacco and rolling paper)

was recovered and that appellant tested negative for drugs at the time of his arrest.[8]

Accordingly, we conclude that the government presented sufficient evidence for a reasonable juror to find appellant guilty beyond a reasonable doubt of possession of cocaine with intent to distribute it.

Appellant's final contention on appeal is that the trial court erred in denying his other motion for judgment of acquittal because the government's evidence was insufficient to prove that he constructively possessed the loaded weapons. According to appellant, he did not know about the weapons in the car because the car belonged to a friend from whom he had borrowed it earlier in the evening.

■ To support a conviction based upon the firearm and ammunition offenses at issue in this case,[9] the government concedes that it was required to prove that appellant had actual or constructive possession of the seized firearms. It is undisputed that appellant was not found in actual possession of the firearms. Thus, in the instant case, the government was required to prove that appellant had constructive possession of the recovered weapons.

■ Constructive possession of a weapon requires proof that a defendant (1) knew of the weapon's location; (2) had the ability to exercise dominion and control over it; and (3) intended to exercise such dominion and control. *See, e.g., Earle v. United States*, 612 A.2d 1258, 1265 (D.C.1992); *Burnette v. United States*, 600 A.2d 1082, 1083 (D.C. 1991); *see also Brown v. United States*, 546 A.2d 390, 394 n. 2 (D.C.1988) (quoting the standard jury instruction). The government

8. The government asserts that appellant's presence "in a parking lot known for illicit activity" and his possession of two loaded guns also support an inference of intent to distribute the seized drugs. We disagree. Appellant was found in an area known for prostitution, *not* drug trafficking. *See Hinnant v. United States*, 520 A.2d 292, 294 (D.C.1987) (factor establishing intent to distribute is possession of drugs in an area known for high incidence of drug trafficking). Furthermore, although an intent to distribute may be inferred from the possession of loaded guns, the government has failed to establish in the instant

action that appellant *possessed* the recovered weapons. See *infra* at 1372–1373.

9. As noted above, appellant was convicted of the following firearm and ammunition offenses: (1) possessing a firearm during a dangerous offense in violation of D.C.Code § 22–3204(b) (1989); (2) carrying a pistol without a license in violation of D.C.Code § 22–3204(a); (3) possessing an unregistered firearm in violation of D.C.Code § 6–2311(a) (two counts); and (4) unlawfully possessing ammunition in violation of D.C.Code § 6–2361(3) (two counts).

may establish these elements by either direct or circumstantial evidence. *Earle, supra,* 612 A.2d at 1265; *Brown, supra,* 546 A.2d at 394. "In cases where 'the government fail[s] to adduce sufficient evidence of one element of constructive possession, knowledge,' *the inquiry stops* and the court 'need not consider the sufficiency of the evidence of the other, dominion and control' [elements]." *Id.* at 394 (quoting *Easley v. United States,* 482 A.2d 779, 782 (D.C.1984)) (emphasis added). In the instant case, the government has failed to sufficiently show that appellant had knowledge of the weapons recovered from the car he was found sitting in.

 First and foremost, the government failed to present *any* circumstantial evidence—*i.e.,* a prior incident involving appellant—from which a jury could reasonably infer appellant's knowledge of the weapons. Because of this important lack of evidence, this case is easily distinguishable from those relied upon by the government. *See, e.g., Campos v. United States,* 617 A.2d 185, 189 (D.C.1992) (conviction for carrying a pistol without a license upheld where gun was found *on defendant* and where evidence showed the carrying was deliberate, not accidental); *In re F.T.J.,* 578 A.2d 1161, 1162–63 (D.C.1990) (adjudication of juvenile delinquency for unlawful possession of a machine gun and ammunition upheld based on constructive possession where gun was in plain view in automobile); *Milton Davis v. United States,* 564 A.2d 31, 45 (D.C.1989) (conviction for carrying a pistol without a license upheld based on constructive possession where defendant had been identified in earlier shooting);[10] *Brown, supra,* 546 A.2d at 395 (conviction for carrying a pistol without a license upheld based on constructive possession where testimony revealed that the pistol had been shown to defendant).

It is usually easy to establish that the owner of a car or the occupant of a living area has constructive possession of illicit items recovered from these places. *See, e.g., Angel Davis, supra,* 623 A.2d at 603 (constructive possession of drugs recovered from bedroom containing defendant's name and clothing); *Thompson v. United States,* 567 A.2d 907, 908–09 (D.C.1989) (constructive possession of drugs in a purse and of loaded weapon recovered from apartment containing bag of defendant's clothing where defendant was not legal resident of apartment). However, in the instant case the government presented no evidence connecting appellant to the car. Although the government confirmed that appellant had no operator's permit and that the car had not been reported stolen, no evidence was presented concerning the car registration or any other information showing that appellant owned the car. Nor was there any evidence showing that appellant regularly used the car (or that he had ever used it prior to the night of his arrest) even if he did not legally own it.

In short, the government presented insufficient evidence for a reasonable juror to infer beyond a reasonable doubt that appellant was familiar with the contents of the car and that he was specifically knowledgeable of the guns that were recovered from underneath the car's rear right seat. Thus, the government has failed to establish that appellant constructively possessed the seized weapons.

### III.

Based upon our review of the record, we conclude that the trial court: (1) did not err in denying appellant's motion to suppress evidence because the search revealing the illicit items was done pursuant to a valid arrest; and (2) did not err in denying appellant's motion for judgment of acquittal for possession of cocaine with intent to distribute because there was sufficient evidence of appellant's intent to distribute (based on the quantity and packaging of the cocaine). However, we also conclude that the trial court *did* err in denying appellant's motion for judgment of acquittal for the firearm and ammunition offenses at issue because there was insufficient evidence of appellant's constructive possession of the loaded handguns.

Accordingly, appellant's conviction for possession of cocaine with intent to distribute is affirmed; but, his conviction for the firearm

10. The government did not rely upon the *Milton Davis* case.

and ammunition offenses, discussed above, is reversed.

*So ordered.*