Betty J. GOINES, Appellant,

v.

UNITED STATES, Appellee.

No. 04–CM–532.

District of Columbia Court of Appeals.

Argued March 11, 2008.

Decided Jan. 29, 2009.

Jonathan W. Anderson, Public Defender Service, with whom James Klein and Jaclyn S. Frankfort, Public Defender Service, were on brief, for appellant.

Stratton C. Strand, Assistant United States Attorney, with whom Jeffrey A. Taylor, United States Attorney, and Roy W. McLeese III and Elizabeth Trosman, Assistant United States Attorneys, were on brief, for appellee.

Before THOMPSON, Associate Judge, FARRELL, Senior Judge,* and ISCOE, Associate Judge, Superior Court of the District of Columbia.**

ISCOE, Associate Judge, Superior Court of the District of Columbia:

Appellant was charged by information with a single count of possession of drug paraphernalia D.C.Code § 48–1103(a) (2001). After conducting an evidentiary hearing, the trial court denied appellant's motion to suppress the seizure of the drug paraphernalia at issue. Appellant then entered a conditional guilty plea to the information, thereby preserving her right to appeal the denial of the suppression motion. We review the trial court's legal conclusions de novo and its factual findings for clear error. See Ornelas v. United States, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); Dancy v. United States, 745 A.2d 259, 272 (D.C.2000).[1] We find that the trial court properly denied appellant's suppression motion and affirm.

## FACTUAL SUMMARY

The facts are essentially undisputed. It was raining on February 6, 2004, at approximately 12:40 p.m. when Metropolitan Police Department ("MPD") Officer Ellen Bader received a radio run for a male "slumped behind the wheel of a car running" at 554 Malcolm X Avenue, S.E., Washington, D.C. The MPD dispatch was based on an anonymous call to the police and it included the color and license plate number of the car. Officer Bader and her partner Officer Murphy, who both were in full uniform, went to that location and saw a car matching the description in the broadcast. The car was legally parked next to the curb.

The uniformed officers parked their cruiser a few feet behind the car and could tell by the exhaust coming from the back that the engine was running. Officer Bader walked up to the passenger side of the car and Officer Murphy approached the driver's side. The officers saw "an older female [appellant] in the driver seat that appeared to be sleeping." Her head was down. The officers then started "banging on the window ... and after a couple of knocks, bangs [appellant] raised her head up and kind of looked at us in a confused manner." After establishing that appellant "was, in fact, conscious" and "not passed out or anything," Officer Bader walked around to the driver's side of the car. The officers indicated that they would like to speak with appellant, and she rolled her window partially down.

The officers asked appellant if she was "okay," and she said "yes." The officers

---

* Judge Farrell was an Associate Judge of the court at the time of argument. His status changed to Senior Judge on January 23, 2009.

** Sitting by designation pursuant to D.C.Code § 11–707(a) (2001).

1. "(A)s a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal. Having said this, we hasten to point out that a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers.... A trial judge views the facts of a particular case in light of the distinctive features and events of the community; likewise, a police officer views the facts through the lens of his police experience and expertise." Ornelas, 517 U.S. at 699, 116 S.Ct. 1657.

then asked appellant what she was doing, and "she said she was waiting for somebody named Toby." Shortly thereafter, appellant pointed out a man to Officer Bader. Appellant asked the man, who may have come from a nearby building, to "go get Toby." Officer Bader then asked the man if he was Toby and whether he knew the appellant. The man, apparently speaking to the appellant, said, "I don't know you, bitch."

At that point, the officers asked appellant to produce her license and registration, because she "seemed like she was sort of confused." Appellant provided her District of Columbia license and registration "with reluctance." The officers then asked appellant to turn off her engine and took her keys, which they placed on the hood of appellant's vehicle and returned to their cruiser to radio the information to the police dispatcher.[2] They pulled their car up alongside appellant's vehicle "to keep her from getting out of the car." Officer Bader was sitting in the passenger seat, so that she was directly beside appellant, approximately two feet away. While they waited for the dispatcher to respond, Officer Bader saw appellant recline her seat "a foot or so back" and make "large jabbing motions" with her right arm, "raising her shoulder upward and then going down with it." Appellant was also making more "subtle" motions with her left arm, and it appeared to Officer Bader that appellant was "pushing something in-between the driver and passenger seat."

The MPD dispatcher soon told the officers that appellant's license had been suspended. The officers then ordered appellant to step out of the car and arrested her for driving with a suspended license.

Since Officer Bader had seen appellant make "such wide movements of her arm," the officers searched the driver's side compartment of the vehicle. In areas accessible to the driver, they recovered eight glass tubes that "contained on one end some black and brownish color residue with a metal copper coil" and subsequently charged her with possession of drug paraphernalia.

## PROCEDURAL HISTORY

Officer Bader's testimony was the only evidence presented at the suppression hearing. Appellant argued at the hearing that the officers did not have reasonable articulable suspicion to believe that "there was criminal activity afoot" at the time that appellant was seized. Appellant contended that the seizure occurred when the police asked for her license and registration. The government contended that the officer's response to the radio run entailed nothing more than asking "a few routine investigatory questions including a request for identification," and did not expressly address when the seizure occurred. The trial judge denied appellant's motion to suppress, stating:

[The officers] went to the car. They found [appellant] asleep. They found the car running while she was asleep. And they awoke her and she seemed confused. Of course, they had to continue to investigate is she drunk, is she under the influence of drugs, where are we with respect to a woman who in the middle of the day is sleeping behind the wheel of a running car. And so, as police officers do, they asked her for her license and registration something that was completely within the realm of (in-

---

**2.** Officer Bader testified that "at some point" the officers asked appellant to "shut the car off and I believe we put the keys on the hood of the car. It might have been when we went

to our vehicle and got out of the rain while we were running her information to the dispatcher."

discernible) for the next step here ... the suggestion that a police officer cannot investigate further when they see a person who does not appear to be in a condition to be driving an automobile simply is contrary to substantial body of case law to say nothing of common sense. So the motion is denied.

Appellant contends that the trial court erred in denying her motion to suppress.

## ANALYSIS

▮▮▮ The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." The "touchstone of the Fourth Amendment is reasonableness ... measured in objective terms by evaluating the totality of the circumstances." *Ohio v. Robinette*, 519 U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996). If the actions of law enforcement constitute a "seizure," this "reasonableness" inquiry is triggered; *see also United States v. Edmonds*, 345 U.S.App. D.C. 131, 135, 240 F.3d 55, 59 (2001).

▮▮▮ In *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989), the Court elaborated its holding in *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968): "the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *See also Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000) (reasonable articulable suspicion "is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence"). However, the officer "must be able to articulate something more than an 'inchoate and unparticularized suspicion or

hunch.'" *Sokolow*, 490 U.S. at 7, 109 S.Ct. 1581. Rather, he must provide "some minimal level of objective justification" for making the stop. *INS v. Delgado*, 466 U.S. 210, 217, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984); *see also Edmonds*, 345 U.S.App. D.C. at 135, 240 F.3d at 59 (a *Terry* stop requires only a "minimal level of objective justification," and an officer may initiate one "based not on certainty, but on the need to 'check out' a reasonable suspicion").

▮▮▮ To determine whether the necessary "objective justification" exists, courts must consider "the totality of the circumstances—the whole picture," cognizant of the fact that "(t)he process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as fact finders are permitted to do the same—and so are law enforcement officers." *United States v. Cortez*, 449 U.S. 411, 417–18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); *see also Edmonds*, 345 U.S.App. D.C. at 135, 240 F.3d at 59 ("When determining whether a *Terry* stop was supported by reasonable suspicion, this Court does not separately scrutinize each factor relied upon by the officer conducting the search ... rather ... the question of whether reasonable suspicion existed can only be answered by considering the totality of the circumstances as the officer on the scene experienced them....").

Appellant contends that the police seized her when they asked for her driver's license and registration. The government appeared to concede in its brief that the police seized the appellant either at that point, or immediately thereafter when the police took her car keys and moved their police car in a way that prevented her from leaving. At oral argument, however,

the government suggested that the seizure might not have occurred until after the police learned that appellant did not have a valid driver's license and placed her under arrest. Certainly, the appellant was seized when the police took her keys and blocked her car. *See, e.g., Mitchell v. United States,* 746 A.2d 877, 885–86 (D.C. 2000).

 For the purposes of this analysis, we need not resolve whether the seizure occurred when the police asked appellant for her license and registration or when they took her car keys. Assuming that appellant is correct that the police seized her when they asked her to produce her license and registration, we find that seizure at this point was justified because, as discussed below, the police had reasonable articulable suspicion that appellant was violating traffic regulations with the potential for putting the safety of others in danger. It is clear that "[t]he Fourth Amendment does not bar the police from stopping and questioning motorists when they witness or suspect a violation of traffic laws, even if the offense is a minor one." *Minnick v. United States,* 607 A.2d 519, 524 (1992). "An officer conducting a routine traffic stop may request a driver's license and vehicle registration, [and] run a computer check...." *Mitchell,* 746 A.2d at 886.

This court has never addressed whether, without more, the observation of a driver, slumped over the wheel in a car that is legally parked with its engine running, provides the police with reasonable articulable suspicion to conduct a Fourth Amendment seizure.[3] We need not decide that narrow issue here because there are several additional facts on which the police relied before seizing defendant. We conclude that under the totality of the circumstances that the officers had the reasonable articulable suspicion necessary for a constitutionally permissible seizure.

Initially, we note that the officers were not simply on routine patrol when they encountered appellant.[4] Rather, a con-

---

3. The government relies on *United States v. Broadie,* 371 U.S.App. D.C. 499, 452 F.3d 875 (2006) to support its contention that those facts alone establish reasonable articulable suspicion. In *Broadie,* the police did not merely observe Broadie asleep in his van, but also initiated contact with him and his subsequent actions helped establish reasonable articulable suspicion. In *Broadie,* officers patrolling a "high drug area" noticed Broadie's van and believed that it was "idling excessively" in violation of 18 DCMR § 2418.3. The officer approached the vehicle, shined his flashlight in the window, and saw Broadie "slumped" behind the wheel. He tapped on the window 15 to 20 times, and when Broadie finally awoke, he was "disoriented," looked "confused," and the officer believed he "could have been under the influence of alcohol or drugs." It is well-settled that law enforcement officers may stop and question an individual after observing a traffic violation (*e.g.,* excessive idling), and Broadie's reaction to the officer aroused legitimate suspicion of intoxication.

4. This is one factor that distinguishes the instant case from cases from other jurisdictions on which appellant relies. *See Eustance v. State,* 326 Mont. 77, 107 P.3d 478 (2005) (sheriff's deputy patrolling rental car parking lot at airport awoke appellant asleep in legally parked car, asked him to perform field sobriety test); *United States v. Hayden,* 740 F.Supp. 650 (S.D.Iowa 1989) (officer drove into interstate rest area to make "routine check" and stopped behind legally parked running car to make "welfare check" of its sleeping occupants); *State v. Tocki,* 32 Wash. App. 457, 648 P.2d 99 (1982) (officers on patrol noticed movement in car parked legally in front of apartment building, approached and discovered appellant "slumped" in passenger seat); *Barber v. Superior Court,* 30 Cal.App.3d 326, 106 Cal.Rptr. 304 (1973) (officer on routine patrol encountered vehicle legally parked on dirt shoulder of highway, observed sleeping occupants "in no obvious need of assistance"). *Cf. Purce v. United States,* 482 A.2d 772, 773 (D.C.1984) (officer discovered appellant asleep in parked car at

cerned person reported to the Metropolitan Police Department that an individual was "slumped" over the wheel of a specific vehicle in a specified location. The officers then went to that location, found a car that matched the description, and saw appellant slumped forward in the driver's seat as the caller had described. It is undisputed that the police may investigate such reports. Moreover, even if no one had called the police about appellant, the police could have been remiss in their duties if they had seen appellant slumped behind the wheel of a car parked on a city street in the middle of the day with the engine running and not initiated some minimal contact with her.

The totality of the circumstances establishes that the police had a reasonable articulable basis for believing, at a minimum, that appellant was in possible violation of District of Columbia traffic regulations. It is well established that a person "operates" a motor vehicle not only when driving it, but also when seated behind the wheel with the engine running. *See Maldonado v. District of Columbia,* 594 A.2d 88, 89–90 (D.C.1991). This is because if the engine is running the vehicle could be put in motion quickly, even accidentally. *Id.* Thus, a person in the driver's seat of a car is in a position to regulate its movements and can have "actual physical control" of the vehicle even though it is parked or standing still. *Houston v. District of Columbia,* 149 A.2d 790 (D.C.1959) (citation omitted). "As long as one is physically or bodily able to assert dominion, in the sense of movement, then she has as much control over an object as she would if she were actually driving the car." *Id; see also Taylor v. United States,* 662 A.2d 1368 (D.C.1995) (defendant in parked

car, with lights and engine running, behind the steering wheel, and apparently asleep found to be "operating" or "having physical control" of the vehicle). It is a "moving violation" for a person, "when operating a motor vehicle, [not to] give full time and attention to the operation of the vehicle." 18 DCMR § 2213.4. A person who, even if only asleep, is slumped behind the wheel of a car with its motor running certainly is not giving full attention to the operation of the vehicle, even if the car is stationary. Accordingly, the police had a reasonable articulable basis for believing that appellant was violating 18 DCMR § 2213.4.

In addition, a person may have her license suspended or revoked if she is found "not physically or mentally qualified to operate a motor vehicle in a manner which will not jeopardize the safety of persons or property," 18 DCMR § 302.2. Here appellant's actions provided additional articulable reasons for the police to believe that she was not capable of driving safely. After the police saw appellant slumped over in the driver's seat, they knocked on the window of the car. Once they roused appellant she looked at the officers "in a confused manner." Although the uniformed officers may have expected a person they awakened to be surprised, appellant's confusion was unusual enough to arouse further their suspicions that appellant was violating traffic regulations.

During their continued conversation, the officers' suspicions were further aroused by the encounter with the man who appellant directed to "go get Toby." Although appellant argues that this interaction was equivocal and irrelevant, we find that it provided additional reasons for the officers' reasonable, articulable suspicion that

6:45 a.m. while conducting "routine check" of amphitheater parking lot in which some

cars had recently been broken into).

she was in violation of traffic regulations or that other criminal activity might be afoot. The man's response, "I don't know you, bitch," suggested, among other things, that appellant was attempting to converse with someone she believed she knew, but who denied knowing her. Here appellant's "confused"—condition, together with her seeming unconscious state behind the wheel of a car parked with its motor running—gave reasonable officers grounds to investigate whether she was capable of driving safely or was violating 18 DCMR § 302.2. Indeed, her condition and actions gave them reason to want to ascertain whether she was even properly licensed and registered. That the police may in fact have suspected that she also was under the influence of drugs or alcohol does not invalidate (and, in fact, adds to) the basis they had to question her ability to drive safely. *See Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

Appellant concedes that once the police discovered that appellant's license was suspended, they had a proper basis for arresting her and does not challenge the search of the car, which led to the subsequent discovery of the drug paraphernalia.[5]

Accordingly, the judgment of the trial court is

*Affirmed.*

---

5. Having found that there was reasonable articulable suspicion for the seizure, we need not reach the government's contention that the officers were justified in their actions pursuant to law enforcement's "community caretaking" function, under *Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973).