*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-CT-226

MOHAMED FADUL, APPELLANT,

v.

DISTRICT OF COLUMBIA, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CTF-18039-12)

(Hon. Truman A. Morrison III, Trial Judge)

(Submitted November 18, 2014                    Decided January 22, 2015)

*M. Kamionski* was on the brief for appellant.

*Irvin B. Nathan*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, *Rosalyn C. Groce*, Deputy Solicitor General, and *John J. Woykovsky*, Assistant Attorney General, were on the brief for appellee.

Before GLICKMAN and MCLEESE, *Associate Judges*, and NEBEKER, *Senior Judge*.

NEBEKER, *Senior Judge*: Mr. Fadul appeals his conviction for driving under the influence of alcohol (DUI), in violation of D.C. Code § 50-2206.11 (2012 Repl.). He argues that the trial court abused its discretion in declining to sanction the government for its failure to provide him with tapes of the responding officers'

radio call, that the evidence is insufficient to show that he "operat[ed]" or was "in physical control of" the vehicle within the meaning of the statute, D.C. Code § 50-2206.11 (2012 Repl.), and that the statute is unconstitutionally vague. We disagree, and affirm.

## I.    Facts and Procedural History

On October 4, 2012, police officers Loveday and Hyland discovered appellant Mohamed Fadul sleeping in the front seat of a parked car, with the engine idling. Observing significant evidence of intoxication, they "radioed for an alcohol-certified officer." When that officer – Officer Carter – arrived, he administered three field sobriety tests, all of which Mr. Fadul failed. Mr. Fadul was placed under arrest. At the stationhouse, he voluntarily provided a urine sample that contained 0.22 grams of ethanol per 100 milliliters of urine. He was initially charged with DUI and operating while impaired (OWI), but the government dismissed the OWI charge on the day of trial.

During trial and pre-trial proceedings, the government produced two recordings of police radio transmissions and delivered them to Mr. Fadul's defense

counsel. Defense counsel stated that she "went to the Government's office to listen to the radio run; however, I never heard any radio run call asking for an alcohol-certified officer," later adding that she only heard "I have a DUI arrest." Concerned that the non-production of this information might violate the *Jencks* Act, the trial court questioned the prosecuting attorney about the circumstances, and questioned Officer Carter about whether "people told [him] anything about the facts of the case at the scene" when he was summoned as an alcohol-certified officer, to which Officer Carter responded that he did not "have a memory of that." Mr. Carter also testified that he did not recall a situation in which, when called to the scene of a suspected DUI case, the facts of the case were described over the radio. At the end of this inquiry, the trial court concluded that "we're left with no understanding of what happened with regard to this piece of tape." Although the defense moved to strike the testimony of the two first-responding officers as a sanction to this perceived *Jencks* (and potential *Brady*[1]) violation, the court declined to do so. The court reasoned that (a) the likelihood of a *Jencks* or *Brady* violation was low, given Officer Carter's testimony, and that (b) the government's

---

[1] *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *see also Miller v. United States*, 14 A.3d 1094, 1107 (D.C. 2011) (applying *Brady*).

inability to produce the tape did not appear to be due to negligence or intentional wrongdoing.

Following a bench trial, the court found Mr. Fadul guilty of DUI. This timely appeal followed.

## II. Analysis

Appellant argues that lack of sanctions for the missing radio run, insufficiency of the evidence showing "operat[ion]" or "physical control,"[2] and unconstitutional vagueness of the DUI statute merit reversal. For the reasons that follow, we reject each argument.

## A. Sanctions for the Missing Radio Run

Appellant's first allegation is that the trial court's "failure to order the disclosure of the audio runs and impose the requested sanctions was an abuse of discretion" under Superior Court Rule of Criminal Procedure 16 (Rule 16). However, Rule 16 itself provides that "this Rule does not . . . authorize the

---

[2] D.C. Code § 50-2206.11. (2012 Repl.).

discovery or inspection of statements made by witnesses or prospective government witnesses except as provided in 18 U.S.C. §3500 [the *Jencks* Act]." Accordingly, this court has consistently analyzed the failure to preserve a radio run in the context of the *Jencks* Act. *E.g., Slye v. United States*, 602 A.2d 135, 137-38 (D.C. 1992) ("By failing to produce Mr. Collier's 911 call from the night of the robbery and two subsequent 911 calls of sightings of the robber, the government violated the *Jencks* Act."); *McCraney v. United States*, 983 A.2d 1041, 1055 (D.C. 2009). Thus, the government's failure to preserve the radio call in this case was not even governed by Rule 16, much less deserving of sanctions under that provision.

The *Jencks* Act, as implemented by Superior Court Rule of Criminal Procedure 26.2, does govern here. We need not decide whether an actual violation of the *Jencks* Act occurred here.[3] We assume without deciding that such a violation occurred, and for the reasons that follow, conclude that the trial court did not abuse its discretion in declining to impose sanctions on the government. *Cf.*

---

[3] In order for production of material to be required under the *Jencks* Act, "[t]he material must be in the possession of the government; the defense must request the material; the material must constitute a 'statement' as defined [in the *Jencks* Act]; and the statement must relate to the subject matter of the witness' direct testimony." *Wheeler v. United States*, 977 A.2d 973, 988 (D.C. 2009), *reh'g granted & opinion modified in other respects*, 987 A.2d 431 (D.C. 2010).

*McGriff v. United States*, 705 A.2d 282, 287 (D.C. 1997) ("In this case we can find no abuse of discretion . . . . The government's failure to produce the traffic ticket was not deliberate . . . . Assuming without deciding that the traffic ticket was a 'statement' within the meaning of the *Jencks* Act, and assuming further that it even existed, McGriff was not prejudiced by the government's failure to produce it.").

Under the *Jencks* Act, "the choice of a sanction [for a violation] is within the trial court's discretion, as is the decision whether to impose any sanction at all." *Robinson v. United States*, 825 A.2d 318, 331 (D.C. 2003). In determining whether to impose sanctions for a *Jencks* violation, trial courts should consider "[1] the degree of negligence or bad faith involved, [2] the importance of the evidence lost, and [3] the evidence of guilt adduced at trial in order to come to a determination that will serve the ends of justice." *Woodall v. United States*, 684 A.2d 1258, 1265 (D.C. 1996). Accordingly, "[t]his court will reverse the trial court's determination as to the appropriate sanction only for an abuse of discretion." *Id.* (citation omitted).

Here, the trial court determined that (1) the government's failure to provide the radio run calling for an alcohol-certified officer was not due to negligence or

bad faith on the part of the government, that (2) the potential *Jencks* recording was unlikely to contain any material description of the facts of the case, since "Officer Carter has never been summoned to a scene that he recalls with . . . a description … of the facts," and that (3) it "did not believe, *either because of the likelihood of prejudice to the defendant*, or because of the circumstances that are attributable to Government conduct . . . that any sanction is appropriate." This is a textbook example of appropriate judicial discretion,[4] and no abuse of discretion has occurred.[5]

## B. Sufficiency of the Evidence

When an appellant challenges a conviction for insufficiency of the evidence, we can only reverse "where the government has produced no evidence from which a reasonable mind might fairly infer guilt beyond a reasonable doubt." *Blaize v. United States*, 21 A.3d 78, 82 (D.C. 2011) (internal quotation marks and citation

---

[4] We note also that the trial court thoroughly performed its duty to conduct an inquiry into the circumstances and reasons for potentially missing *Jencks* material.

[5] *See McGriff v. United States*, 705 A.2d 282, 287 (D.C. 1997); *Gibson v. United States*, 536 A.2d 78, 82-86 (D.C. 1987) ("We reject an automatic reversal … because it is highly unlikely that the tape of the radio run . . . would contain anything in the nature of impeaching material.").

omitted). Appellant argues that the evidence is insufficient to show that he "operate[d]" or was "in physical control" of the vehicle. D.C. Code § 50-2206.11 (2012 Repl.). However, this court's case law makes it clear that "operating" in this context "means being in actual physical control of the vehicle, capable of putting the vehicle into movement or preventing its movement." *Maldonado v. District of Columbia*, 594 A.2d 88, 89 (D.C. 1991) (internal quotation marks and citations omitted). Under this definition, "operation" or "in physical control" includes sleeping in the driver's seat of a parked car with the engine idling. *Goines v. United States*, 964 A.2d 141, 146 (D.C. 2009).

### C. Unconstitutional Vagueness

Appellant's final contention is that "the statute is unconstitutionally vague."[6] Constitutional challenges to a statute raised for the first time on appeal are reviewed for plain error. *Kinane v. United States*, 12 A.3d 23, 26 (D.C. 2011); Under this standard, the appellant must establish (1) error that is (2) "clear" or "obvious," and that (3) "affects substantial rights." *Thomas v. United States*, 914

---

[6] Mr. Fadul asserts that this is so because "[t]here is no mention of impaired 'driving'[]" and no definition of "operation" in the statute, and "there is really no way that Fadul could understand that the conduct in which he was engaged . . . was proscribed by the statute."

A.2d 1, 9, 20 (D.C. 2006). If this burden is met, then we may exercise our discretion to "notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 8 (internal quotation marks and citation omitted).

Here, Mr. Fadul is unable to establish even the first part of the plain error test: error. The Fifth Amendment Due Process Clause requires "that notice be given of the conduct proscribed by criminal statutes." *McNeely v. United States*, 874 A.2d 371, 381 (D.C. 2005) (internal citation omitted). "[H]owever, a statute is not unconstitutionally vague even if it requires that a person's conduct conform to a somewhat amorphous—yet comprehensible—standard; it is unconstitutionally vague only if no standard of conduct is specified at all." *Id.* at 382 (internal quotation marks and citations omitted). In undertaking this inquiry, "we must take the statute as though it read precisely as the highest court of the State has interpreted it," *Wainwright v. Stone*, 414 U.S. 21, 22-23 (1973). "The statutory construction . . . is considered part of the statute for purposes of assessing its vagueness." *Parnigoni v. District of Columbia*, 933 A.2d 823, 827 (D.C. 2007).

This court has consistently interpreted "operate" and "in physical control" to mean "being in actual physical control of the vehicle, capable of putting the vehicle into movement or preventing its movement," *Maldonado v. District of Columbia*, 594 A.2d 88, 89 (D.C. 1991). Neither motion of the vehicle nor alertness in the defendant is required. *Goines v. United States*, 964 A.2d 141, 146 (D.C. 2009). With the statute thus clarified, Mr. Fadul could have reasonably understood that his contemplated conduct – sleeping in the driver's seat of a parked car with the engine idling – constituted "operat[ion]" of the vehicle. *See id.* Thus, the statute is not unconstitutionally vague, and under that theory, Mr. Fadul is unable to satisfy even the first part of the plain error test – error.[7]

## Conclusion

For the preceding reasons, we conclude that the trial court did not abuse its discretion in choosing not to sanction the government for failure to produce potential *Jencks* material, that the evidence against Mr. Fadul was sufficient to prove that he "operat[ed]" or was "in physical control" of the vehicle, and that Mr.

---

[7] In further support of this holding, we note that under the 1981 code, this court has already held that the operating while intoxicated statute (OWI), D.C. Code § 40-716 (b)(2) (2001), was not unconstitutionally vague. *Anand v. District of Columbia*, 801 A.2d 951, 958 (D.C. 2002).

Fadul's unconstitutional vagueness challenge to the DUI statute fails to establish "error" under plain error review.

*Affirmed.*