*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 17-CO-441

UNITED STATES, APPELLANT,

v.

JAMES BUMPHUS, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CF2-10498-15)

(Hon. Maribeth Raffinan, Trial Judge)

(Argued September 28, 2017            Decided May 21, 2020)

Before FISHER, BECKWITH, and EASTERLY, *Associate Judges*.

*Chrisellen R. Kolb*, Assistant United States Attorney, with whom *Channing D. Phillips*, United States Attorney at the time the brief was filed, and *Elizabeth Trosman* and *Marina A. Torres*, Assistant United States Attorneys, were on the brief, for appellant.

*William Collins*, Public Defender Service, with whom *Samia Fam* and *Shilpa Satoskar*, Public Defender Service, were on the brief, for appellee.

Opinion for the court by *Associate Judge* EASTERLY.

Dissenting opinion by *Associate Judge* FISHER at page 24.

EASTERLY, *Associate Judge*: The government appeals an order in which the trial court (1) determined that James Bumphus's Fourth Amendment right to be free from unreasonable searches and seizures was violated when the police seized his car and then delayed several days without "any legitimate explanation, however small" before searching the vehicle, and (2) suppressed the gun recovered in the eventual search. We affirm the trial court's suppression ruling.

## I.      Facts

The government presented one witness at the suppression hearing: Sergeant Jason Bagshaw, then a thirteen-year employee of the Metropolitan Police Department (MPD). Sergeant Bagshaw testified that, based on a tip from a confidential informant that gave the police probable cause to believe Mr. Bumphus had a handgun in his Lincoln Aviator, the police stopped Mr. Bumphus on a Friday evening around 9:30 p.m. Mr. Bumphus had just parked his car when the police pulled up behind him. After Mr. Bumphus got out of his car but before he was told the reason for the stop, he threw his keys to an unidentified person who left the scene. Sergeant Bagshaw testified that the police immediately detained Mr. Bumphus and placed him in handcuffs. Because the car was locked and Sergeant Bagshaw testified he was "unable to get a Slim Jim" to open the car door without a

key, Sergeant Bagshaw "opted to tow [the car]" and then search it.[1] The police held Mr. Bumphus in handcuffs for at least two and a half hours, until the tow truck arrived after midnight. As Mr. Bumphus's car was being towed away and after he had been released from handcuffs, Mr. Bumphus asked whether he could remove some personal items—his child's backpack and his wife's purse, which contained her cell phone—from the car. Sergeant Bagshaw told him he could not.

For the next four days, from early Saturday morning until late in the day on Tuesday, the police held the car at an MPD storage facility. On Tuesday afternoon, Sergeant Bagshaw requested and obtained a warrant to search the car; at around 5:30 p.m. he opened the car with a "Slim Jim" and found a handgun. Sergeant Bagshaw testified that he "had to apply" for a search warrant "since no one would cooperate" with a search of the car on the scene. He further testified that he could not get a warrant over the weekend because Superior Court judges and Assistant United States Attorneys work on the weekends only "under emergency circumstances," and this was not an emergency because the car was in a secure location. Although Sergeant Bagshaw understood that Superior Court

---

[1] As discussed, see *infra* note 4, the police were authorized under the Fourth Amendment under a special exception to the warrant requirement that allows law enforcement officers to seize and search automobiles if they have probable cause to believe they will discover contraband.

judges and AUSAs work "on Mondays," he agreed that he continued to "h[o]ld on to the car without bothering to search it" on the Monday after the seizure. Despite Mr. Bumphus's specific request to remove some personal possessions from the car, Sergeant Bagshaw testified that "[t]here was nothing [that] indicated" Mr. Bumphus or his family had "an absolute necessity" to regain possession of any of these items. Notwithstanding his knowledge that Mr. Bumphus's wife's purse contained her cellphone, he also expressed the view that "there [was] nothing in [the purse] that you cannot live without for four days." Sergeant Bagshaw added that while he eventually returned the items to the family, "[o]ne could argue that I did not need to return them necessarily," though he later admitted returning them was the "right thing" to do.

At a hearing on the suppression motion, the court observed that the police, having seized the vehicle without a warrant, did not have authority to "indefinitely retain possession of" it. Focusing on the delay between seizing the car and searching it, the court asked the government to explain why the delay was reasonable in this case. The court indicated that it was skeptical that the reason for the delay—the officer's asserted belief that the family did not need their personal possessions for a few days—constituted diligence and further observed that Superior Court judges "do hear emergency matters" over the weekend "as they

relate to arrests and search warrants." Although the prosecutor agreed with the latter observation, she defended the officer's assessment that there was not an "emergency"; she also suggested that the officer may have had a legitimate reason for his inaction, noting, "I don't know the officer's case load and I don't know the [Emergency] Judge's case load." The court responded that it needed to "stick to the record": it found that the officer "did not say any of those things [about case loads]" and that, even accepting a delay over the weekend, he "d[id] not state[,] [']I thought about [getting a warrant]. But[] I got pulled [in]to a number of work obligations that needed to get priority and that is the reason I did not go to get the search warrant on that Monday.[']"

Ultimately the trial court orally ruled that, "in viewing all of the circumstances here, I don't think that the delay was reasonable based upon the testimony of this officer." The court emphasized that in this case, the officer "did not . . . state that on or during that four[-]day period[] that he was looking into other issues that related to the case; or that he was investigating something further; or even that he had other work that was pulling him." The court concluded that, although "in some cases four days may be reasonable[,] . . . under these facts and circumstances, I don't think that it was reasonable." Accordingly, the court stated that it intended to grant Mr. Bumphus's motion to suppress.

In its written order memorializing its ruling, the trial court determined that the MPD had had probable cause to stop and search Mr. Bumphus's vehicle, but the delay between seizing and searching Mr. Bumphus's car "violated [his] Fourth Amendment right to be free of unreasonable searches and seizures," even though the search warrant eventually obtained by Sergeant Bagshaw was valid.[2] The court made clear that it understood the Fourth Amendment imposes neither a requirement that searches be conducted contemporaneously with seizures nor a preset outer time limit on conducting constitutional searches. Rather, relying on *United States v. Johns*, 469 U.S. 478 (1985), the court explained that any "delay must be reasonable under the circumstances." After quoting from Sergeant Bagshaw's testimony, the court found that in Mr. Bumphus's case, the record was both "devoid of any indication of police diligence or necessity" for the delay in searching the car, and "utterly lacking in any legitimate explanation, however small," for the delay in applying for a warrant—deficiencies the court deemed

---

[2] The court separately found that the police violated Mr. Bumphus's Fourth Amendment rights by detaining him "in handcuffs[] for two and a half hours while waiting for the tow truck to arrive . . . [in the] absence of testimony in the record that such a delay was necessary to the investigation." The court explained that, because the police possessed probable cause to believe the car contained a firearm before they detained Mr. Bumphus, the seizure and ultimate search of his car was not a "fruit" of this Fourth Amendment violation and would not justify suppression of the gun and ammunition recovered from the car.

"crucial."[3]    Again quoting from Sergeant Bagshaw's testimony, the court further determined that the actions of the police demonstrated an "outright disregard for the adverse effect such a delay might have on the possessory interests of the vehicle's owner."[4]   The court concluded these interests were "great":  "Not only does the dispossession of the vehicle itself limit its owner's ability to go about his or her daily activities, the additional deprivation of the cell phone, purse, and backpack—things many people would consider necessities of daily life—also constitutes a serious invasion of an individual's possessory interests."   "On this record" and "[u]nder the[] specific circumstances" of this case, the trial court ruled

---

[3]  The court specifically noted:

> When asked on cross-examination why he did not apply for a search warrant on Saturday or Sunday, Sergeant Bagshaw responded that although he knew judges and AUSAs work on weekends for emergency circumstances, he did not believe this was "an emergency circumstance" because the car was at a secure facility.  What is more, Sergeant Bagshaw's explanation for not applying for the warrant on Monday indicated . . . the absence of any affirmative need for the delay (such as having to work on other higher-priority matters) . . . .

[4]  The court specifically noted:

> Sergeant Bagshaw testified that he knew the car contained personal effects, such as Mr. Bumphus'[s] wife's purse, a cell phone, and a child's backpack.  When asked whether he thought those were things that the family might need, he answered, "No.  There was nothing [that] indicated . . . that it was an absolute necessity."  Pressed further about why he did not believe the items were necessities, Sergeant Bagshaw responded, "There is nothing in there that you cannot live without for four days."

that "the detention of Mr. Bumphus'[s] vehicle was an unreasonable seizure under the Fourth Amendment, and the fruits of that seizure must be suppressed."

## II.     Standard of Review

In reviewing a trial court's ruling on a suppression motion, "we accept the trial court's findings of fact unless they are clearly erroneous[,] and we review the facts and reasonable inferences therefrom in the light most favorable to the prevailing party." *Hooks v. United States*, 208 A.3d 741, 745 (D.C. 2019).  We review the trial court's legal conclusions, including whether the seizure was unreasonable under the Fourth Amendment and whether exclusion was required, de novo. *Id.; see also Jones v. United States,* 168 A.3d 703, 717 (D.C. 2017).

## III.    The Unreasonableness of the Extended Seizure and Delayed Search

"The touchstone of the Fourth Amendment is reasonableness . . . ." *Goines v. United States*, 964 A.2d 141, 144 (D.C. 2009) (internal quotation marks omitted).  Because government seizures may deprive a person of a significant possessory interest, seizures that are reasonable at their inception may become unreasonable over time. *United States v. Jacobsen*, 466 U.S. 109, 124 & n.25

(1984). Determining whether an extended seizure is reasonable requires balancing the government's justification for the prolonged intrusion on an individual's possessory interests against the "nature and quality" of those interests. *United States v. Place*, 462 U.S. 696, 703, 708–09 (1983) (holding extended seizure and delayed search of initially lawfully seized luggage was unreasonable under the circumstances, *id.* at 709–10); *see Johns*, 469 U.S. at 480–81, 486–88 (holding extended seizure and delayed search of a lawfully seized truck and its cargo was reasonable under the circumstances of that case but explicitly stating that it was not foreclosing challenges to delayed searches in other cases).

In its briefs to this court, the government argues against any sort of balancing of interests under *Place* and *Johns* to assess the reasonableness of the extended seizure and delayed search of Mr. Bumphus's car. Effectively, the government asks this court to significantly expand the automobile exception to the warrant requirement[5] and hold that—regardless of the nature of a person's

---

[5] *See United States v. Ross*, 456 U.S. 798, 809 (1982) (explaining that the automobile exception to the warrant requirement permits a search of a vehicle if there is probable cause to believe that it contains contraband); *Carroll v. United States*, 267 U.S. 132, 149 (1925) (holding that an automobile may be searched and seized without a warrant if the officer has probable cause to believe it contains contraband); *see also West v. United States*, 100 A.3d 1076, 1084 (D.C. 2014) ("[U]nder the so-called automobile exception to the Fourth Amendment warrant

(continued . . .)

possessory interests or of the government's law-enforcement interests—there are no objective, temporal limits on searches of cars if the police have probable cause for the initial warrantless seizure. This argument is inconsistent with the government's concession in the trial court that "the existence of probable cause [to seize Mr. Bumphus's car] alone would not justify [its] indefinite detention," as well as its similar concession in its brief before this court. This argument is also irreconcilable with the Supreme Court's decisions in *Place* and *Johns*.

The government argues that *Place* has little if any bearing on this case because, inter alia, it concerned a seizure of luggage which was conducted pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968), and was based only on reasonable articulable suspicion. Although the nature of the seizure lessened the government's legitimate justification for its intrusion on the individual's possessory interest in *Place*, it does not render inapposite the guidance that opinion gives generally about the balancing of interests when assessing whether an extended seizure and delayed search is reasonable under the Fourth Amendment.

---

(. . . continued)
requirement, when police have probable cause to believe that a vehicle contains contraband, they may search the vehicle without a warrant.").

As for *Johns*, the government interprets it as endorsing the government's expansive authority to conduct warrantless seizures and searches of cars such that an extended, three-day seizure and corresponding delay in searching a vehicle can never amount to a Fourth Amendment violation. The government misreads *Johns*. There, customs officers conducted a warrantless seizure of two trucks parked on a remote Arizona airstrip fifty miles from the Mexican border that contained what looked and smelled like bales of marijuana; the officers then held the trucks—that the defendants were never seen driving and that were never identified as belonging to any of the defendants—for three days before searching them. 469 U.S. at 480–81. In its analysis, the Court did not, as the government argues, "actually *h[o]ld* that a three-day delay [of a search of a car] does not offend the Fourth Amendment" and is per se reasonable; rather, the Court explained that the extended seizure and delayed search was not "necessarily unreasonable" based on the facts in that case, noting in particular that no interest protected by the Fourth Amendment had "even [been] alleged." *Id.* at 487. The Court likewise did not, as the government argues, accord "controlling significance" to "the broad sweep of the automobile exception," and hold "[i]n typical circumstances, once police have probable cause to believe that a vehicle contains evidence of crime, the delay between seizing and searching the vehicle 'is *immaterial*' for Fourth Amendment purposes." To the contrary, although the Court "beg[an]" its "analysis" with a

discussion of the automobile exception to the warrant requirement under *Ross*, *id.* at 483, holding that it did not require a warrantless search to be conducted "immediately" after the seizure of a vehicle, *id.* at 484, the Court concluded its analysis by cautioning that it was "*not suggest*[*ing*] that police officers may indefinitely retain possession of a vehicle and its contents before they complete a vehicle search," *id*. at 487 (emphasis added).  Further, the Court acknowledged that, in another case, "the owner of a vehicle or its contents" might be able "to prove that delay in the completion of a vehicle search was unreasonable because it adversely affected a privacy or possessory interest." *Id.*

This court, until now, has not endorsed the balancing test articulated in *Place* and applied in *Johns* to evaluate a constitutional challenge to the delay between a seizure and search.[6]  But federal courts have done so, and in a number of

---

[6]  Our dissenting colleague notes that we are "creating new law," as if that alone were some basis for disagreement with the majority opinion. *Post* at 25.  In any event, it is the government that is asking us to reverse and to hold for the first time that a delayed search after a prolonged seizure does not violate the Fourth Amendment.  We conclude that *Johns* and *Place* bar us from reaching such a decision.  Although neither of the Supreme Court's decisions, given their facts, "dictate[s]" our holding, *id.* at 24, they articulated (some decades ago) the legal framework to analyze the Fourth Amendment question.  It is our dissenting colleague who fails to explain either why these decisions do not support this legal framework or why, applying this framework, the law-enforcement conduct in this case was constitutionally reasonable in light of the trial court's factual findings.

instances they have concluded suppression was warranted.[7] The government looks to federal appellate decisions reaching the opposite conclusion. But in holding that suppression was not warranted, those courts do not reject a balancing of interests in line with *Johns* and *Place*; rather, examining different facts, they simply conclude that the balance is in the government's favor.[8] These and other decisions cited by

---

[7] *See, e.g.*, *United States v. Pratt*, 915 F.3d 266, 272 (4th Cir. 2019) (affirming suppression ruling based on an unreasonable delay between seizure and search where trial court balanced need for delay against possessory interests and found, inter alia, that "the government ha[d] no persuasive justification for the delay in obtaining a search warrant"); *United States v. Mitchell*, 565 F.3d 1347, 1351–52 (11th Cir. 2009) (affirming suppression based on unreasonable delay between seizure and search where the officer "didn't see any urgency" in executing the search and the defendant's interests in his hard drive were significant despite the presence of child pornography on the hard drive); *United States v. Fife*, 356 F. Supp. 3d 790, 800 (N.D. Iowa 2019) (granting motion to suppress based on delay between seizure and search where the "[g]overnment proffered no reason for the delay in obtaining a warrant" and the officer responsible "performed no additional work on the case for months, simply because he did not believe the matter was time sensitive"); *United States v. Uu*, 293 F. Supp. 3d 1209, 1214–16 & n.8 (D. Hawaii 2017) (granting motion to suppress based on delay between seizure and search where government delay was mostly "unexcused and unexplained" and was outweighed by defendant's possessory interest in a backpack containing "contraband along with a pair of binoculars"); *see also State v. Rosenbaum*, 826 S.E.2d 18, 25–28 (Ga. 2019) (affirming suppression based in part on unreasonable delay between search and seizure where "the State made no showing of particular complexity, difficulty in drafting the warrant, or competing demands on a limited number of officers").

[8] *See United States v. Burgard*, 675 F.3d 1029, 1033–35 (7th Cir. 2012) (noting that courts must employ balancing tests to assess the reasonableness of delay under the Fourth Amendment, but a six-day delay in searching a cell phone was reasonable where officer, who was not the seizing officer, "wanted to consult with the AUSA," had his attention "diverted by a more serious robbery case," and was "careful" and "attentive," *id.* at 1034); *United States v. Gastiaburo*, 16 F.3d

(continued . . .)

the government cannot reasonably be read to support the government's interpretation of *Johns* or its broader assertion that any delay in the search of a car seized based on probable cause is constitutionally insignificant.[9]

Balancing the interests in this case, we look first to the government's justification for the actions of the police. There is no dispute that the police had probable cause to seize Mr. Bumphus's car. But viewing the evidence in the light most favorable to the trial court's ruling, we see no legitimate reason for the delay

---

(. . . continued)
582, 586–87 (4th Cir. 1994) (concluding no need for a warrant where police impounded arrestee's car after discovering drugs and drug paraphernalia pursuant to a consent search, subsequently developed probable cause to search the car again thirty-eight days later, and searched the car on the same day they acquired probable cause); *United States v. Howard*, 991 F.2d 195, 202 (5th Cir. 1993) (affirming the trial court's ruling "that the two day delay was not unreasonable under *Johns*" without detailing any facts about the justification for the delay or the owner's possessory interests in the car or its contents).

[9] For example, the government cites *United States v. Donahue*, 764 F.3d 293, 300 (3d Cir. 2014), for the proposition that "in typical circumstances, once police have probable cause to believe that a vehicle contains evidence of crime, the delay between seizing and searching the vehicle 'is immaterial' for Fourth Amendment purposes." But *Donahue* was a government appeal from a trial court determination that law enforcement lacked probable cause to conduct a warrantless search of a car. *Id.* at 297–98. To the extent it addressed the propriety of the extended seizure and delayed search, it relied on distinct facts, involving the transfer of custody of the car from one law enforcement agency (the U.S. Marshals Service, which initially seized and promptly searched the car of a fugitive who failed to report to prison) to another (the FBI, which conducted a second search after acquiring custody of the car). *Id.* at 296–97, 301.

between that seizure and the search four days later. To begin, Sergeant Bagshaw's testimony that he was required to get a search warrant because no one would cooperate at the scene is incorrect. For almost a century it has been clear that the police have the right and ability to search a vehicle, without consent or a warrant, based on probable cause. See *supra* note 4. Sergeant Bagshaw's asserted understanding that he could not get a warrant on the weekend because there was no qualifying "emergency" is likewise incorrect: as the trial court stated, judges in the Superior Court work on weekends and "hear emergency matters as they relate to arrests and search warrants." Lastly, Sergeant Bagshaw agreed without reservation or explanation that he continued to "h[o]ld on to the car without bothering to search it" on the Monday—a business day—after the weekend.

Having heard this testimony, the trial court found that the record was "devoid of any indication of police diligence or necessity" for the delay. Further, the court made a factual finding that the police acted with "outright disregard for the adverse effect [their] delay" might have on Mr. Bumphus. We must defer to the trial court's factual findings unless they are clearly erroneous. The government has not challenged the court's ruling on this basis, and we would reject such a challenge if it had. The government argues instead that the court "placed undue weight on Sergeant Bagshaw's inability to explain the reasons for the delay." We

cannot fault the trial court for considering the only evidence the government presented. To the extent the government argues that it did not have an adequate opportunity to present evidence to the trial court to justify the delay, we are unpersuaded. Mr. Bumphus raised the issue of the extended seizure and delayed search in response to Sergeant Bagshaw's testimony at the suppression hearing. He filed a supplemental suppression motion the day after Sergeant Bagshaw testified, and the government was given an opportunity to—and did—file a supplemental brief in opposition to Mr. Bumphus's supplemental motion. The court then heard argument from the parties. The government did not request that it be permitted to present additional evidence to explain the delay between the seizure and the search or to recall Sergeant Bagshaw so that he could augment his explanation for his actions.

Shifting our focus to Mr. Bumphus's possessory interests, we agree with the trial court that they were "great." As the court found, his car was an essential means of "go[ing] about . . . daily activities"; the "additional deprivation of" items within the car—his wife's purse and cell phone and his child's backpack—"also constitutes a serious invasion of an individual's possessory interests." The government does not challenge the strength of Mr. Bumphus's possessory interests directly. Instead, the government argues that the items seized from Mr. Bumphus

were inferably unimportant to him based on his actions—both his "obstruct[ion]" of an immediate search by refusing to give consent and his asserted failure to request their return in the four days between their seizure and the search. First, because the police had authority pursuant to *United States v. Ross*, 456 U.S. 798, 825 (1982), to search the car without a warrant, Mr. Bumphus's refusal to consent did not "obstruct" the police. Particularly when we examine the record in the light most favorable to the trial court's ruling, we see no inconsistency between (a) Mr. Bumphus's decision to stand on his rights and refuse to consent to a search of his car, and (b) his desire to regain access to his car and the possessions within it in a timely manner after the police took actions legally available to them. As for the government's assertion that Mr. Bumphus did not request that his car be returned to him in the days that followed the seizure, the government did not present evidence on this subject at the hearing. The only evidence in the record is that Mr. Bumphus did ask the police to allow him to retrieve the purse (containing the cell phone) and the backpack from the car just before the police had his car towed. In any event, such a failure would have only potentially lessened his possessory interest in his car and the items contained therein; we cannot say it would have compelled a different balancing of interests. *See, e.g.*, *United States v. Fife*, 356 F. Supp. 3d 790, 803 (N.D. Iowa 2019); *United States v. Uu*, 293 F. Supp. 3d 1209, 1215 (D. Hawaii 2017).

Alternatively, the government argues that a four-day deprivation of these items is not unreasonable under *Johns*.  As explained above, however, we do not read *Johns* to insulate any vehicle seizure of just a few days' length from constitutional challenge.  Nor do we believe the manifest possessory interests here may be reasonably compared to the absence of possessory interests in the trucks of unknown ownership carrying bales of marijuana and parked at a remote airstrip in *Johns*.  *See* 469 U.S. at 487.

The trial court's decision was narrowly tailored to the facts of this case.  It recognized that "there are surely legitimate reasons, whether or not related to [a] particular case, that an officer might require more time to prepare and submit a search warrant affidavit."  But where the government's only witness gave no such reasons for the four-day delay between the seizure and the search, and where the items seized from Mr. Bumphus had obvious import to his daily life, it did not err in concluding that the police actions were unreasonable and that Mr. Bumphus's rights under the Fourth Amendment had been violated.

## IV.     The Application of the Exclusionary Rule

We next consider the government's challenge to the trial court's ruling that the gun and ammunition recovered from Mr. Bumphus's car should be suppressed. Preliminarily, there is some question whether this argument is properly before us. The government overlooks the procedural history of this case when it asserts that the trial court, having found a Fourth Amendment violation, granted Mr. Bumphus's motion to suppress "reflexively." The government did not argue—either in its opposition to Mr. Bumphus's motion to suppress or in its opposition to his supplemental motion filed after the suppression hearing—that, if the court found a Fourth Amendment violation, it should nonetheless determine that application of the exclusionary rule was not warranted. Without argument to that effect and reasonably interpreting the point as conceded, the trial court concluded in the order on appeal that the exclusionary rule applied. The government subsequently clarified that it was not making such a concession, by filing a motion for reconsideration. But the government did not file this motion until after it filed its Notice of Appeal. The trial court's subsequent order analyzing and rejecting

this argument is thus not part of our record.[10]  *See, e.g.*, *In re K.G.*, 178 A.3d 1213, 1216 n.10 (D.C. 2018).  Even so, Mr. Bumphus included the trial court's order denying the government's motion for reconsideration in his supplemental appendix to this court, and the government did not move to strike it.  Accordingly, assisted by the reasoning in the trial court's putative ruling, we address this issue.

"It has long been the law that evidence collected in violation of the Fourth Amendment is considered 'fruit of the poisonous tree' and generally may not be used by the government to prove a defendant's guilt."  *Hooks*, 208 A.3d at 750 (quoting *Wong Sun v. United States*, 371 U.S. 471, 488 (1963)).  The animating principle of the exclusionary rule is "to deter future Fourth Amendment violations."  *Davis v. United States*, 564 U.S. 229, 236–37 (2011); *see also Jones*, 168 A.3d at 717 ("[T]he exclusionary rule . . . is designed to safeguard Fourth Amendment rights generally through its deterrent effect." (citation and internal quotation marks omitted)).  The government argues, however, that the rule should not apply to this case because Sergeant Bagshaw acted in good faith and exclusion will have no deterrent effect.  We are unpersuaded by the government's argument.

---

[10]  Additionally, the trial court's order is only advisory, given that jurisdiction over the case had transferred to this court.  *See Bell v. United States*, 676 A.2d 37, 41 (D.C. 1996); *Smith v. Pollin*, 194 F.2d 349, 350 (D.C. Cir. 1952).

The government argues that Supreme Court cases holding that "evidence obtained in good faith and reasonable reliance upon a warrant need not be suppressed, even if the warrant is later determined to be unsupported by probable cause or otherwise defective," "demonstrate" that "exclusion of the gun and ammunition [seized] in this case was unwarranted." There are two problems with this argument. First, the trial court did not find the police acted in good faith. To the contrary, unable to "glean even the slightest shred of diligence from Sergeant Bagshaw's testimony," the trial court found that he had acted with "outright disregard" for Mr. Bumphus's rights. Effectively, the court determined that the officer gratuitously waited four days to seek a warrant giving him authority he already had to search Mr. Bumphus's car, and in so doing acted with gross negligence (if not deliberately) to withhold important personal objects—the car and its contents—from Mr. Bumphus.[11] *See Davis*, 564 U.S. at 238 (reaffirming

---

[11] The government implicitly challenges the trial court's factual findings by asserting that Sergeant Bagshaw sought a warrant to search Mr. Bumphus's vehicle "in the exercise of caution"; but the government's assertion (1) has no support in the record, see *supra* note 3, and (2) is unhelpful because the record is silent as to why he could not have sought a warrant "in the exercise of caution" much more quickly. Indeed, if the desire to seek a warrant is to ensure that the police have lawful authority to hold and search a car, then time is of the essence. *See Burgard*, 675 F.3d at 1033 (explaining that "unnecessary delays in seeking warrants undermine the criminal justice process . . . [by] prevent[ing] the judiciary from promptly evaluating and correcting improper seizures"); *see also id*. at 1035 ("After seizing an item without a warrant, an officer must make it a priority to secure a search warrant that complies with the Fourth Amendment.").

that "[w]hen the police exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights, the deterrent value of exclusion is strong" and exclusion is appropriate (internal quotation marks omitted)); *see also United States v. Burgard*, 675 F.3d 1029, 1033 (7th Cir. 2012) (explaining that "[w]hen police neglect to seek a warrant without any good explanation for the delay, it appears that the state is indifferent to searching the item and the intrusion on an individual's possessory interest is less likely to be justifiable").[12]

Second, the existence of a later-acquired warrant is factually and legally immaterial in our assessment of the asserted good faith of law enforcement in this case. When Sergeant Bagshaw extended the seizure of Mr. Bumphus's car and delayed its search from Friday evening to Tuesday when he finally applied for a warrant, he did not rely on this warrant, which did not yet exist. Nor did the

---

[12] Citing *Burgard*, the government argues that "[o]ther courts have declined to suppress in analogous circumstances where 'the unreasonableness of a delay is a very close call, and an officer could not be charged with knowledge that the delay violated the law.'" But *Burgard* is factually distinguishable. The Seventh Circuit stressed in that case that the detective's delay in seeking a warrant "was not the result of complete abdication of his work or failure to see any urgency"; rather he "wanted to be sure he had all of the information from the seizing officer and he wanted to consult with the AUSA, all the while attending to his other law enforcement duties," 675 F.3d at 1034 (internal quotation marks omitted), which included an intervening, "more pressing" armed robbery investigation, *id.* at 1031. The government has not cited to us any court decision applying "the good faith exception in a situation remotely like the present one," *Jones*, 168 A.3d at 720, where the police gave no credited explanation for the extended seizure and delayed search.

magistrate judge to whom he ultimately submitted the warrant application implicitly approve the preceding delay by issuing the warrant. As the trial court found, "the magistrate judge who issued the warrant had no information regarding the necessity of the delay or Sergeant Bagshaw's lack of diligence." Further, this court has held that a later-obtained warrant generally "d[oes] not operate to attenuate [an] illegality" preceding its issuance. *Evans v. United States*, 122 A.3d 876, 886 (D.C. 2015).[13]

Alternatively, citing *Hudson v. Michigan*, 547 U.S. 586 (2006), the government challenges the causal relationship between the Fourth Amendment violation in this case and the discovery of the evidence, and argues that suppression is not warranted because the "delay in seeking a warrant had no effect

---

[13] The government acknowledges *Evans* in a footnote of its reply brief, but asserts it is no longer good law because it relied in part on this court's decision in *Smith v. United States*, 111 A.3d 1 (D.C. 2014), *vacated on reh'g*, 2015 WL 5456143 (D.C. Sept. 9, 2015). The fate of *Smith*, which had excluded evidence following a *Terry* stop based on an officer's mistake of law, 111 A.3d at 9, and was vacated following the Supreme Court's decision in *Heien v. North Carolina*, 135 S. Ct. 530 (2014), *Smith v. United States*, No. 12-CM-1742, 2015 WL 5456143, at *1 (D.C. Sept. 9, 2015), has no bearing on this holding of *Evans*. Indeed, *Evans* itself forecloses the government's argument: we acknowledged that the government had sought rehearing in *Smith* and explained that the government had argued that *Heien* undermined *Smith*'s holding regarding the lawfulness of the traffic stop only and had not challenged the court's separate holding that a later-acquired warrant did not "purge the taint" of an earlier Fourth Amendment violation. *Evans*, 122 A.3d at 886 & n.4.

whatsoever on the ultimate discovery of the evidence."[14] *Hudson* is inapposite. In that case, the Court found that the violation of the knock-and-announce requirement in the execution of a valid warrant "was *not* a but-for cause of obtaining the evidence." *Id.* at 592 (emphasizing that the police were acting on an already-issued warrant based on probable cause, *id.* at 588, 600–01). Here, the extended warrantless seizure was an integral part of the but-for causal chain of events leading to the recovery of the gun and ammunition in this case and itself caused the violation of Mr. Bumphus's Fourth Amendment possessory interests in the car and the personal items it contained.[15] See *supra* Part III. And, as explained above, the fact that Sergeant Bagshaw subsequently conducted a delayed search under the guise of an unnecessary warrant did not attenuate the taint of the earlier Fourth Amendment violation.

---

[14] Our dissenting colleague makes a similar causation argument. *See post* at 25–26.

[15] Had the police released the car on day two, they could not have conducted the search on day four. *See Hudson*, 547 U.S. at 592 (explaining that but-for cause is in essence "causation in the logical sense" (internal quotation marks omitted)); *cf. United States v. Mosley*, 454 F.3d 249, 255–56 (3rd Cir. 2006) (agreeing that "[t]he temporal sequence of events makes all the difference," *id.* at 256, when assessing causation for the purposes of the exclusionary rule). By contrast, the trial court determined that the unreasonable detention of Mr. Bumphus, which also violated the Fourth Amendment, did not "result" in the search of the vehicle and did not warrant suppression of the weapon. See *supra* note 2.

Because we conclude that "the circumstances of this case are precisely those we want to deter and amply justify the application of the exclusionary rule," *Hooks*, 208 A.3d at 750, we uphold the trial court's suppression ruling in this case.

For the reasons stated above, the judgment of the Superior Court is affirmed.

*So ordered.*

FISHER, *Associate Judge*, dissenting: The police did not violate the Fourth Amendment and, even if they did, suppression of the handgun is not a proper use of the exclusionary rule.

The Supreme Court's decision in *United States v. Johns*, 469 U.S. 478 (1985), does not dictate, or even approve, the result reached here. The Court *held* that the *warrantless* search of certain packages was not unreasonable "merely because it occurred three days after the packages were unloaded from the pickup trucks." *Id*. at 483. The Court therefore reversed a decision of the Ninth Circuit which had held that the delay after the initial seizure made the subsequent search unreasonable. *Id*. at 480. Musing generally about delay, the Court did not "*foreclose* the possibility that the owner of a vehicle or its contents might attempt to prove that delay in the completion of a vehicle search was unreasonable because

it adversely affected a privacy or possessory interest." *Id.* at 487 (emphasis added). That dictum is a far cry from endorsing suppression in the circumstances presented here. Nor does *United States v. Place*, 462 U.S. 696 (1983), support that result. *See id.* at 709 ("The length of the detention of respondent's luggage alone precludes the conclusion that the seizure was reasonable in the absence of probable cause."). Thus the majority acknowledges that it is creating new law for the District of Columbia. *Ante* at 12 ("This court, until now, has not endorsed the balancing test articulated in *Place* and applied in *Johns* to evaluate a constitutional challenge to the delay between a seizure and search"). That new law, of course, is being declared long after this search took place.

Even if the police should have obtained a search warrant more quickly, suppression is not a proper remedy for their failure to do so. In *Hudson v. Michigan*, 547 U.S. 586 (2006), the Supreme Court focused on the amount of time that elapsed before the execution of a search warrant. In that case the police committed a knock-and-announce violation by entering the house too quickly. The Court held that suppression was not justified. "Whether that preliminary misstep had occurred *or not*, the police would have executed the warrant they had obtained, and would have discovered the gun and drugs inside the house." *Id.* at 592. "Since

the interests that were violated in this case have nothing to do with the seizure of the evidence, the exclusionary rule is inapplicable." *Id.* at 594.

As the government accurately points out, "the delay in seeking the warrant . . . had no effect whatsoever on the ultimate discovery of the evidence. Had Sergeant Bagshaw applied for the warrant in a more timely fashion, the search would have uncovered the same evidence." I add that, had the sergeant conducted a warrantless search on the scene, as the majority implies he should have done, the same evidence would have been recovered. The police undoubtedly inconvenienced appellant's wife and daughter, but here, as in *Hudson*, "the interests that were violated . . . have nothing to do with the seizure of the evidence." We should reverse the order of suppression.